In re **FINANCIAL MANAGEMENT SCIENCES, INC., Debtor.**

**James R. Walsh, Trustee, Plaintiff,**

v.

**The Toledo Hospital, Defendant.**

**James R. Walsh, Trustee, Plaintiff,**

v.

**Sto–Rox School District, Defendant.**

**Bankruptcy No. 98–25315–BM. Adversary Nos. 00–2287– BM, 00–2289–BM.**

United States Bankruptcy Court, W.D. Pennsylvania.

Feb. 2, 2001.

Richard A. Finberg, Bradley S. Gelder, Malakoff, Doyle & Finberg, P.C., Pittsburgh, PA, for plaintiff.

Mark D. Shepard, Amy L. Wetterau, Babst, Calland, Clements & Zomnir, P.C., Pittsburgh, PA, for defendant Toledo Hospital.

Elaine Cribbs Rizza, The Rizza Group Professional Corporation, Washington, PA, for defendant Sto–Rox School District.

## MEMORANDUM OPINION

BERNARD MARKOVITZ, Bankruptcy Judge.

Sto–Rox School District and The Toledo Hospital, defendants in the above adversary actions, have brought motions for summary judgment. They assert, among other things, that § 546(e) of the Bankruptcy Code applies and bars the chapter 7 trustee from utilizing § 544(b) of the Bankruptcy Code to assert claims against them in connection with pre-petition transfers made when debtor Financial Management Sciences, Inc. purchased certain securities from them.

The chapter 7 trustee denies that § 546(e) applies and therefore does not prevent him from proceeding against defendants pursuant to the rights and powers granted by § 544(b).

The motion of defendant Toledo Hospital will be granted as to Count I of the complaint but will be denied with respect to the remaining counts. The motion of defendant Sto–Rox will be denied in its entirety.

## —BACKGROUND—

Debtor, which was in the business of buying and selling securities, purchased certain securities from defendant Toledo Hospital on August 4, 1994, and on September 22, 1994, and from defendant Sto–Rox on January 9, 1995.

An involuntary chapter 7 petition was brought against debtor on July 6, 1998. An order for relief was issued and a chapter 7 trustee was appointed on September 16, 1998.

The chapter 7 trustee and Toledo Hospital have stipulated that Hefren–Tillotson, Inc. prepared the buy-tickets for the securities that debtor purchased from Toledo Hospital. Payment for the securities was transferred from Mid–State Bank to Pershing (a division of Donaldson, Lufkin & Jenrette Securities Corporation) and from Pershing to Society National Bank. The parties agree that Hefren–Tillotson is a stockbroker; that Pershing is a securities clearing agency; that Mid–State Bank is custodian bank for debtor; and that Society National Bank is custodian bank for defendant Toledo Hospital.

The chapter 7 trustee and Sto–Rox have not stipulated as to any of the facts concerning the transaction whereby debtor purchased securities from Sto–Rox. Nothing is known concerning how the payment was transferred from debtor to Sto–Rox.

Utilizing the so-called "strong-arm" provision found at § 544 of the bankruptcy Code, the chapter 7 trustee brought the above adversary actions against defendants. He alleged that debtor had purchased the securities at "off-market prices that did not provide fair value to debtor"— i.e., for a price that exceeded the market value of the securities.

Each complaint consists of five counts. Count I is based on the Pennsylvania version of the Uniform Fraudulent Transfer Act (herein "PUFTA"), 12 Pa.C.S.A. § 5101 *et seq.* Counts II, III and IV state claims for money had and received, for unjust enrichment and for conversion, respectively. In his prayer for relief, the chapter 7 trustee seeks to recover debtor's alleged losses stemming from the above securities transactions. He seeks to recover the sum of $304,822.00 from defendant Sto–Rox and the sum of $3,179,944.00 from defendant Toledo Hospital.

Defendants brought motions for summary judgment as to each and every count

of the complaints on November 17, 2000. Oral arguments on their motions were heard on December 18, 2000, and January 10, 2001, respectively. The arguments asserted in favor of as well as against summary judgment in each case are virtually identical.

## —DISCUSSION—

Summary judgment "shall be entered forthwith" if the pleadings, depositions, answers to interrogatories, admissions on file and affidavits, if any, show that there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law. Federal Rule of Civil Procedure 56(c).

The mere existence of a factual dispute between the parties, without more, will not defeat an otherwise properly supported summary judgment motion. Rule 56(c), by its very terms, requires that the dispute involve a *genuine* issue of *material* fact. *Anderson v. Liberty Lobby,* 477 U.S. 242, 247–48,106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).

An issue is "genuine" in this context if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party". *Anderson,* 477 U.S. at 248, 106 S.Ct. at 2510. This formulation mirrors the standard applied to a motion for a directed verdict under Federal Rule of Civil Procedure 50(a). *Anderson,* 477 U.S. at 250, 106 S.Ct. at 2511.

Applicable substantive law determines whether a given dispute is "material" for purposes of Rule 56(c). A fact is "material" in this context if, under the applicable substantive law, it might affect the outcome of the case. *Anderson,* 477 U.S. at 250, 106 S.Ct. at 2511.

If the party moving for summary judgment has identified material facts to show that no genuine issues remain for trial, the party opposing summary judgment:

> ... must do more than show that there is some metaphysical doubt as to the material facts.... Where the record taken as a whole could not lead a rational finder of fact to find for the nonmoving party, there is "no genuine issue for trial".

*Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 586–87, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986).

The chapter 7 trustee, we previously noted, has brought these adversary action pursuant to the rights and powers conferred by § 544(b) of the Bankruptcy Code. Subsection 546(e) of the bankruptcy Code, however, imposes a limitation upon the exercise of these rights and powers. It provides in relevant part as follows:

> Notwithstanding § 544 ... of this title, the trustee may not avoid a transfer that is a settlement payment, as defined in section 101 or 741 of this title, made by or to a ... stockbroker, financial institution, or securities clearing agency, that is made before the commencement of the case, except under section 548(a)(1)(A).

11 U.S.C. § 546(e).

Summary judgment in their favor as to all counts of the complaint is warranted, defendants assert, because § 546(e) applies and therefore provides a complete defense to the trustee's utilization of § 544(b) to assert the causes of action found in the various counts of the complaints. According to defendants, the transfers debtor made when it purchased the above securities from them were prepetition settlement payments that were made by or to various stockbrokers, financial institutions and/or securities clearing agencies.

■ There is no genuine dispute that the payments debtor made when it purchased the above securities from defendant Toledo Hospital constituted "transfers", as defined by the Bankruptcy Code, which includes every mode of parting with or disposing of property or an interest therein, whether direct or indirect, absolute or conditional, voluntary or involuntary. 11 U.S.C. § 101(54)

The definitions of the term "settlement payment" referred to in § 546(e) are not particularly illuminating. Section 741 of the Bankruptcy Code defines "settlement payment" as:

> ... a preliminary settlement payment, a partial settlement payment, an interim settlement payment, a final settlement payment, or any other similar payment commonly used in the securities trade.

11 U.S.C. § 741(8). This "definition" is unilluminating in that the *definiendum* appears as a term in the *definiens*. Section 101 of the Bankruptcy Code provides a similar unhelpful "definition", but limits it to payments occurring in the forward contracts trade. 11 U.S.C. § 101(51A).

The scope of the term "settlement payment" is extremely broad. *Lowenschuss v. Resorts International, Inc. (In re Resorts International, Inc.)*, 181 F.3d 505, 515 (3d Cir.), *cert. denied*, 528 U.S. 1021, 120 S.Ct. 531, 145 L.Ed.2d 411 (1999) (citing *In the Matter of Bevill, Bresler & Schulman Asset Management Corp.*, 878 F.2d 742, 751 (3d Cir.1989)). In general, any transfer of cash or securities made to complete a securities transaction is considered a settlement payment by the securities industry. *In re Resorts International*, 181 F.3d at 515 (citing to *Kaiser Steel Corp. v. Charles Schwab & Co.*, 913 F.2d 846, 849 (10th Cir.1990)).

If we apply this latter characterization of "settlement payment" to the transactions underlying the securities purchased from Toledo Hospital, there is no genuine disagreement that the transfers debtor made were settlement payments for purposes of § 546(e). Debtor transferred various sums of money to complete its purchases of the securities from Toledo Hospital.

There also is no genuine disagreement that these settlement payments were made by or to a stockbroker, financial institution, or securities clearing agency. As was previously indicated, the chapter 7 trustee and Toledo Hospital have stipulated that the buy-ticket was written by Hefren Tillotson; that payment for the securities flowed from Mid–State Bank, debtor's custodian bank, to Pershing and from Pershing to Society National Bank, custodian for defendant Toledo Hospital. For purposes of § 546(e), Hefren Tillotson qualifies as a stockbroker in accordance with 11 U.S.C. § 101(53A); Pershing qualifies as a securities clearing agency in accordance with 11 U.S.C. § 101(48); Mid–State Bank and Society National Bank qualify as financial institutions in accordance with 11 U.S.C. § 101(22).

Finally, there is no dispute that the settlement payments to Toledo Hospital were made prior to commencement of debtor's bankruptcy case. Debtor purchased the securities from defendant Toledo Hospital in August and September of 1994. The involuntary petition was not brought against debtor until July of 1998, while the order for relief was not entered until September of 1998.

Although we strongly suspect that the transaction whereby debtor purchased securities from defendant Sto–Rox is similar to that in the case of. Toledo Hospital, we are not able at this time to conclude with the required confidence that § 546(e) applies to it as well. In particular, defendant Sto–Rox has come forward with nothing

indicating who the "intermediaries" were when debtor purchased the securities from it. Based on the record as presented by Sto–Rox, a reasonable finder of fact easily could conclude that no settlement payment was made by or to any stockbroker, securities clearing agency, or financial institution.

The chapter 7 trustee does not seriously dispute that, *if it applies to the facts of these adversary actions*, § 546(e) provides defendants with a complete defense to his utilization of § 544(b) to avoid the above transfers. He denies, however, that § 546(e) applies to these cases.

We disagree. In our estimation subsection 546(e) does apply to these cases and bars the chapter 7 trustee from utilizing § 544(b) to avoid the transfers at issue here.

■ Our role when called upon to construe a federal statute is to give effect to congressional intent. *Idahoan Fresh v. Advantage Produce, Inc.*, 157 F.3d 197, 202 (3d Cir.1998).

■ Because it is presumed that Congress expressed its intent through the ordinary meaning of the language it employed, statutory construction begins with the plain language of the statute itself. *Id.* There is no need for further inquiry if the language of the statute is plain and unambiguous, except in the "extraordinary circumstance" where a literal reading would produce an absurd result. *Id.* We may depart from the plain language only upon an extraordinary showing of a contrary congressional intent expressed in the legislative history. *Id.*

The Third Circuit adhered to these precepts in *Resorts International* when it considered whether § 546(e) applied to that case. ("We begin every statutory interpretation by looking to the plain language of the statute. . . . When the language is clear, no further inquiry is necessary unless the plain language leads to an absurd result."). 181 F.3d at 515. Following its lead, as we unquestionably must, we too have looked to the plain language of § 546(e).

As did the Third Circuit, we have applied § 546(e) to material facts that are not in dispute and have arrived at the conclusion that § 546(e) provides defendant Toledo Hospital with a complete defense to the chapter 7 trustee's reliance upon § 544(b) to avoid the transfers that occurred when debtor purchased securities from it but does not provide Sto–Rox with such a defense.

The trustee in *Resorts International* sought to avoid pursuant to § 548(a)(1)(B) of the Bankruptcy Code debtor's purchase of securities from an individual in the context of an LBO. The only party involved in the transaction that was in bankruptcy was the purchaser of the securities. Neither the seller of the securities nor any of the intermediary stockbrokers and financial institutions through whom the settlement payment was made was in bankruptcy.

While acknowledging that the transaction at issue there was "not the most common securities transaction", the Third Circuit nonetheless saw no absurdity in concluding after applying the plain language of § 546(e) to the facts presented therein that § 546(e) applied and barred the trustee's avoidance action ("Despite the fact that payments to shareholders in an LBO are not the most common securities transaction, we see no absurd result from the application of the statute's plain language and will not disregard it".). 181 F.3d at 516.

No absurdity results from applying the plain language of § 546(e) to the undisputed facts of the case involving Toledo Hospital and concluding that it prevents the

chapter 7 trustee from utilizing § 544(b) to avoid the transactions. As was the case in *Resorts International,* the only party involved in the settlement payments at issue here that is in bankruptcy is the purchaser of the securities. None of the stockbrokers, financial institutions or the securities clearing agency by or to whom the settlement payments were made is a debtor in bankruptcy. If no absurdity was perceived to occur from applying § 546(e) in *Resorts International,* we similarly must conclude on the same basis that none arises from applying § 546(e) to the facts of the Toledo Hospital case.

In an apparent attempt to persuade us that § 546(e) does not apply, the chapter 7 trustee has cited to remarks by individual members of Congress appearing in The Congressional Record, not in an official committee report, to the effect that § 546(e) was enacted to apply where stockbrokers, or securities clearing agencies and the like are debtors in bankruptcy. The trustee's citations to these remarks is not convincing.

■ When it is considering legislative history in construing a statute, a court relies upon official committee reports rather than isolated comments by individual legislators or other materials unrelated to the language of the statute or official committee reports. *Garcia v. United States,* 469 U.S. 70, 76, 105 S.Ct. 479, 83 L.Ed.2d 472 (1984). Nothing in the official committee reports of which we are aware would seem to indicate that application of § 546(e) to the adversary action involving Toledo Hospital contravenes the intent of Congress when it enacted § 546(e).

■ Moreover, even if the isolated statements by individual members of Congress to which the chapter 7 trustee calls our attention are entitled to any weight here, they are not inconsistent with applying § 546(e) as we have done here. Their remarks do not indicate that § 546(e) should not be applied to a debtor in bankruptcy that is not a stockbroker, a securities clearing agency, or other player in the securities industry.

The conclusion that § 546(e) applies to this adversary action does not mean that we must grant the summary judgment motion of Toledo Hospital for each and every one of the four counts of the complaint.

By its express terms, § 546(e) bars the chapter 7 trustee's utilization of the rights and powers conferred by § 544 to *avoid* certain settlement payments. From this we infer that § 546(e) does not apply where § 544 is utilized to avoid a transfer.

Count I of the complaint, we previously noted, is brought under PUFTA. Counts II, III and IV are for money had and received, unjust enrichment, and conversion, respectively.

Avoidance of a fraudulent transfer, to the extent necessary to satisfy a creditor's claim, is an available remedy under PUFTA. 12 Pa.C.S.A. § 5107(a)(1) (Purdon's 1999). Although the complaint in the Toledo Hospital case does not expressly so state, the chapter 7 trustee unquestionably seeks in Count I to avoid the above settlement payments and to recover from Toledo Hospital in accordance with 11 U.S.C. § 550(a) the value thereof. It therefore follows that § 546(e) prevents the chapter 7 trustee from asserting the claim under PUFTA as set forth in Count I of the complaint in that case.

We are not prepared at this time, however, to conclude with respect to the remaining counts of the complaint that the chapter 7 trustee seeks to *avoid* the above settlement payments. Consequently, we will not enter summary judgment at this time with respect to the remaining three counts of the complaint in the Toledo Hospital case.

We also are not able at this time to conclude with the requisite certainty that summary judgment is warranted in either of these adversary actions with respect to the remaining counts for other reasons given by defendants that are specific to each count. The reasons given do not present the "clearest of clear cases" justifying summary judgment.

An appropriate order shall issue.

### ORDER OF COURT

**AND NOW,** this **2nd** day of **February,** 2001, for reasons set forth in the accompanying memorandum opinion, it hereby is **ORDERED, ADJUDGED,** and **DECREED** that the motion for summary judgment by defendant Toledo Hospital at Adversary No. 00–2287–BM is **GRANTED** as to **COUNT I** of the complaint and **DENIED** as to the **REMAINING COUNTS.**

The motion for summary judgment by defendant Sto–Rox School District at Adversary No. 00–2289–BM is **DENIED IN ITS ENTIRETY.**

It is **SO ORDERED.**